My first argument this morning is that the district court abused its discretion when it refused to accept Mr. Cook's pleas based on a blanket policy against Alfred Pleas. In the record before this court, Judge Fees made his feelings regarding Alfred Pleas very In the circumstances, though, it seems to me that as to the specific case here, the defendant and the government disagreed on an important factual question, which is the use of a gun or not. And in view of that, what difference does it make what the judge's general feelings are or whether in some other case an Alfred Plea that was completely supported by the facts might not be accepted? Well, I think first what we have to do is recognize that there's a distinction between the plea agreement and a guilty plea. One can plead guilty without a plea agreement. So the fact that, and I recognize Judge Fees said there was not a meeting of the minds with respect to the plea agreement. And that there wasn't an adequate factual basis for it. Well, the factual basis is a separate issue. With respect to the factual basis, all that Rule 11 requires is that there be a sufficient factual basis within the record. Not that there be, not that the defendant in his plea colloquy, in fact, state a sufficient factual basis. Clearly, there were, the facts known to the court were sufficient to establish a factual basis for this plea. And now separating out the plea agreement from the guilty plea, the plea agreement, there was not a meeting of the minds. And I certainly concede that the plea agreement at that point could not have been accepted because it was, in fact, a contract between the two parties. But after the court decided not to accept the plea agreement, Mr. Cook made it very clear. In fact, he himself made it very clear to the court he wanted to plead guilty. But didn't the judge go through, then, the colloquy? And when he got to the operative facts on count two, the guy wouldn't admit the facts. Well, what, correct. I mean, what he was agreeing to was that. And that's what made him guilty of the offense. That's what, in fact, made this an Alford plea. The government doesn't have to consent to an Alford plea. The judge has to agree to an Alford plea. But the government doesn't have to consent to an Alford plea. Under Rule 11, the only thing in terms of pleas that the government has to agree to is a conditional plea or plea agreement. And what is there that requires the judge to accept an Alford plea? I beg your pardon? What law is there that requires a district judge to accept an Alford plea? There is no requirement. In fact, under Alford itself, it says that it is discretionary. But the problem here, of course, is judge fees exercise no discretion. Well, that's not really entirely true. What he said was, I had never accepted one. That's just a statement of fact. Sure. I don't believe in them, really, which is fine. I do lots of things I don't believe in because I feel like the law requires me to do it. But he never said, you know, I will categorically not accept this. So if it's an Alford plea, out of here. Well, what he said was, the likelihood I will ever accept one is slim and none. Okay. But I'm going to come to you. What I want to ask you is this. Let us suppose he said that because there are a vast number of judges who dislike Alford pleas for very valid reasons. So if he had expressed a categorical, if he had expressed a categorical disinclination to accept an Alford plea, what authority do you have that that would be a problem? Because he's not saying, I will not accept guilty pleas. He's saying, I will accept guilty pleas as provided in the Federal rules, but I will not accept the fact that he was guilty. Well, of course, an Alford plea is a valid plea. Of course it is. It's a valid plea, but the Court is under, I'm just suggesting to you that the Court is under no obligation to accept an Alford plea if it doesn't wish to. That's absolutely correct, Your Honor. But as this Court and the Supreme Court have made clear, the existence of discretion requires its exercise. And if a judge has a categorical policy against accepting certain types of pleas. Now, there's no law that says certain types of pleas. The law that you have cited says no pleas. As a categorical matter, I just don't believe in plea bargaining. So out of here, I'm not going to listen to you. That's very different to me from saying, you know, I just believe that it is important for society and the public interest to have a defendant admit guilt. And so if he refuses to admit guilt, I'm simply not going to accept the plea. Well, you know, judges also have the discretion whether or not to accept certain plea bargains. And what the Court said in Miller is that if you had a categorical policy against accepting plea bargains, you're not exercising any discretion. Here, the Court had the discretion whether or not to accept an Alford plea, but he said, look, I don't believe in Alford pleas. I'm not going to accept them. So he, in fact, again, is exercising, announcing a categorical policy against accepting such pleas. Okay. And the best authority for the proposition that you can't do that, if he did, is what? Well, it's Miller, which dealt with the plea bargains. There's also, I believe you said it's Anderson, which is another plea case. And in terms of, then, the factual basis, you know, the Court may look to the entire record, as I said before. There was no dispute from Mr. Cook's perspective that the government could, in fact, prove the factual basis that had already been discussed in terms of the plea agreement, that the key element, the only disputed element, was, of course, whether or not he had taken a simulated gun from his pocket. He agreed that that could be proven. The government certainly agreed. Let me ask you a question on the factual basis for the Alford plea. As I understand it, the factual basis, when the defendant will not admit guilt, has to be strong. And here, with the defendant not admitting that he had a toy weapon, and with the evidence being somewhat equivocal from the point of view of the bank witness's perspective, how is there such strong evidence that the Alford plea had a basis anyway? Well, strong evidence, it's not, in fact, entirely clear what the term strong evidence is. Well, I understand that. Here, look, the government, both parties certainly believed that this was sufficient. I mean, there was certainly no question that bank robberies took place. So the only issue is with respect to this gun. Mr. Cook conceded that, look, even though he says he doesn't have a gun, certainly the government's evidence, and, you know, we certainly believe that the teller perhaps was mistaken, but that's the evidence. And we have a jury which ultimately, of course, found beyond a reasonable doubt that that was sufficient evidence. They certainly found that that evidence was strong enough. So from just taking the step back, without the trial itself, that was the evidence known to the court at the time. That certainly was strong enough. It was strong enough to ultimately convict him beyond a reasonable doubt. I'm not sure that strong evidence, in fact, is equivalent to proof beyond a reasonable doubt. And I seem to recall looking at some cases from other circuits which said it's not the same as proof beyond a reasonable doubt, but I don't have those sites in front of me. But, you know, certainly there was, I think, sufficiently strong evidence here to support a factual basis for the plea. And we certainly don't believe that this error was harmless. Obviously, he went to trial. If he had not gone to trial, certainly he would never have received an obstruction enhancement, which obviously means that his sentence would have been lower than what he, in fact, received. And there was also a distinct possibility that he would have received the acceptance of responsibility reduction, which he did not receive. So the error certainly was not harmless. I believe it made a potential four-year difference in his sentence because he was forced to go to trial. And we believe that if, in fact, the court does remand this for Mr. Cook to replead and be resentenced, that it should be before a different district judge. There are a couple of factors, this Court has said, that should be considered in those circumstances. We believe those factors are certainly satisfied here. It would necessarily be very difficult for Judge Feese to put aside his belief in opposition to Alford Pleas. And I think for the appearance of justice, I'm not sure even if he were to then, if he got sent back to Judge Feese, he could simply say, because Alford Pleas are discretionary. Well, I now recognize I have the discretion, and in the exercise of discretion, I'm still not going to accept it. I don't think that we can necessarily trust that he, in fact, is exercising discretion. I have a question about the issue of who would sit on remand. The government concedes that there's an error in the restitution that requires a remand. If, and I know you don't concede this, but if we were to affirm the conviction and reverse only on the restitution question, do you still contend that a different district judge must be assigned under our standards? Just for the limited purpose of the restitution order? Correct. In that situation, no, because in that situation, you're only dealing with, I think, in many ways. Relatively ministerial. Exactly. Exactly. So, no, if you were to ask exactly. So it's strictly related to, your request for a different judge is strictly on the Alford question, really, it comes down to. That's correct. Okay. That's correct, Your Honor. And with respect to some of the sentencing issues, you know, I note with the obstruction enhancements. Mr. Levy, would it be the policy of your office to seek recusal from Judge Feese or from any other district judge who expressed the view that Alford pleas were inappropriate? I don't know, Your Honor. That would be a decision that would have to be made by hires up in my office. I don't know the answer to that. Well, because that's the necessary consequence of what you're saying, isn't it? If, in fact, an Alford – I expect if, in fact, an Alford plea was going to be entered in a particular case and we were aware of a judge's strongly held beliefs in opposition to an Alford plea, that we very well might seek recusal. Well, if that were the case, I mean, there's no reason not to try to make one in every case. I beg your pardon? There's no real reason not to try to make one in every case in that situation, is there? Well, certainly I don't think an Alford plea is necessary in most cases, though I certainly understand Your Honor's point. Okay. With respect to sensing, just very briefly, we do not believe merely the fact that Mr. Cook was convicted by a jury necessarily meant he should receive the obstruction enhancements. Obviously, the teller, Lori Harvey, believed that she saw a gun. But other than the so-called confession from Mr. Cook himself, there was certainly no corroboration of that. None of the surveillance cameras saw a gun. None of the other Well, what is your response to he's got to be right one time or the other? And they're mutually inconsistent, so one or the other is wrong and are a lie. Well, that's right. I mean, each time he in fact said he did not have a gun, it was under oath. The one time he said he in fact possessed a toy gun was when he had been in custody for nearly seven hours. He was going through heroin withdrawal. In fact, the FBI picked him up on his way to the methadone clinic and they were aware of that fact. They kept him sitting there for seven hours. He was going through withdrawal. They threatened to arrest his wife. They went to the hospital where his wife was hospitalized, got a letter from his wife saying, you know, please dear, do whatever you can. And so after all of that, he said, okay. This is after he had been denying the entire time in the interview that he ever possessed a gun. He said, okay, yes, I possessed a toy gun. It was only under those circumstances that he ever said he had a toy gun. I think clearly when he was put to it under oath, when he had to tell the truth, he told the truth. And so under those circumstances, I don't believe the obstruction enhancement should have been imposed. And I'd like to reserve some time unless the Court has any questions on any other issues. Thank you. Okay. Mr. Silver. May it please the Court. Eric Silver appearing again on behalf of the United States. In United States v. O'Brien, this Court, in dealing with an Alford plea, quoted the First Sergeant Bernarski and said, quote, we could not support a principle under which if the Court refused to accept a plea, the defendant, after trial and conviction and sentence not to his liking, could return and freely litigate the correctness of the Court's finding that the requirements of rule of law have not been fully met, unquote. And that's really what we're addressing here with the Alford plea. I think turning first to the factual basis. I don't really think there's any dispute other than what's been said with the obstruction of justice enhancement that the government felt that it could prove its case at trial beyond a reasonable doubt or that it had evidence beyond a reasonable doubt to support conviction. But when you're looking at the factual basis, the question is what was before the judge at the time of the decision, not simply what evidence the government had. The whole point of the kind of strong factual basis analysis from Alford is that when the defendant protests his innocence, the Court is required to weigh against that protestation of innocence the actual facts in the case to see if it can overcome that protestation of innocence. Now, it doesn't have to be beyond a reasonable doubt. The District Court doesn't have to find that he personally believes he or she beyond a reasonable doubt that the defendant committed the crime. It just means, as this Court indicated in Neal, that there's sufficient evidence to reach the conclusion that the defendant committed the crime beyond a reasonable doubt. But I think it's important to look at what was before the Court at the time of the change of plea. And this is not like most cases in which this Court has addressed Alford pleas and held there was a sufficient factual basis, where, for example, in Neal, the government made a proffer of what evidence it had. This is not like United States v. King, where this Court combined the defendant's own statements with a look at the actual evidence, which was the postcards in that case that constituted the fraud. And it's not like United States v. Albert, which this Court looked at kind of the totality of the evidence, including fingerprint results, polygraph results, a number of factors that constitute the actual evidence in this case. All that was before the District Court at the time was the stipulated statement of facts that the parties stipulated that the government could prove the defendant had a gun. And that's really not evidence. That's in fact. I mean, there's no facts there. Just simply saying that the government can prove its case is not a basis, in fact, for the District Court to evaluate whether he or she should accept the plea, despite the defendant's protestation of innocence. In fact, the Fifth Circuit dealt with that issue in Willett. Their defense counsel indicated that, well, there was sufficient facts supporting the guilty plea. And the Fifth Circuit on appeal said, well, no. I mean, you need the actual evidence. Just defense counsel saying that is insufficient. And that's the problem here. Once the defendant denied having a gun, there was no actual evidence before the court that the defendant, in fact, had a gun. I mean, it's true that the government could have proffered evidence. We could have said we would have proved through the testimony of Teller Harvey that she saw a gun, she was familiar with guns, and therefore she was sure that she had seen it, she thought it was real. We could have told the District Court that the defendant had confessed initially to having a gun. We could have done all those things, but we didn't. And there's no evidence in the record of any of that evidence for the District Court to evaluate. And so on this factual record, there would have been no basis to take this Alford plea. In fact, if the District Court had done so, it would really defeat the purpose of Alford. I think it's important to note that the factual basis in Alford does not flow from Rule 11. It flows from the Constitution. And there has to be sufficient evidence to overcome the protestation. And there simply was not in this case. Apart from the lack of factual basis, this Court has repeatedly emphasized that District Courts have discretion to take Alford pleas and have repeatedly rejected the idea that simply because it's an Alford plea is not a sufficient basis to reject the plea. That's really what was at issue with him, Bryan itself, as well as Melendrez-Salas. And I think there's important reasons related to the plea itself. First of all, the 1974 Advisory Committee comments to Rule 11 indicate that an Alford plea is really a discouraged type of plea. Moreover, this Court in O'Brien and the First Circuit in Barnarski indicated that there's policy reasons why you might not accept the plea. The public might not understand that type of plea. Also, as demonstrated by Alford itself and this Court's cases as well, for example in King, these types of pleas are more open to challenge later. If the defendant is not ultimately happy with the sentence that he or she gets, these are more likely to result in a challenge because that's the essence of the plea. The defendant usually believes that it's better to plead guilty to get a chance at a particular sentence, and when you don't get that sentence, there's more of a likelihood later that you'll challenge it. So there simply is not a basis on these facts to conclude that the District Court abused its discretion in refusing to accept the guilty plea. I also note that this case is different than either Miller or Anderson. I think it's first important to distinguish Miller and Anderson as both being involved in a charge bargain. This case is not involved at all. In fact, Miller was quite clear that the result would be, at least suggested that the result would be different if it was a sentencing bargain. The Court there noted in a footnote that the Advisory Committee comments suggested that it would be perfectly okay to reject sentencing bargains because a sentencing bargain at its most basic is really just a recommendation to the District Court, and the District Court retains ultimate discretion what to do. Now, when you deal with a charge bargain, you have different principles because you have separation of power principles that come into play, and so the District Court's discretion there is somewhat more limited. It's still an abuse of discretion, but because of the overlay of separation of power principles, there's different concerns. This was not a charge bargain. The defendant was attempting to plead guilty to precisely the same charges in which he was ultimately convicted of. I think it's important also to emphasize that this is not like the situation in Miller, even if you set aside the charge bargain. There, the policy was in multiple count indictments, the District Court simply refused to accept pleas that were only to one count of the indictment. It was not based on the particular facts of any case. The rejection of an Alfred plea is always based on the facts of the particular case. It's based on the idea that the defendant refuses to admit his guilt and, in fact, says he's not guilty, that he's innocent. And so the rejection of that type of plea is inherently based upon the factual record that exists in the District Court, and it is proper in that circumstance to reject the plea. I also note on harmless error discussion, the defendant asked the court to reverse the conviction and allow him to plead anew, essentially. The defendant does not have a right to conviction by guilty plea rather than conviction by jury trial. He was convicted of the exact same charges he attempted to plead guilty to. There's no basis in this case for vacating his conviction. Now, he can argue that not being allowed to plead guilty harmed his sentence and perhaps sentencing, there should be a resentencing in this case, but there's no basis to vacate the conviction. In fact, the defendant could be in a place in a better position. Well, as I understood opposing counsel's argument, he said it could have made a four-year difference in his sentence. And you're saying, yes, but if he were to get that advantage, it has to be by way of resentencing and not by way of starting over with a plea? I'm not sure I understand. I think there's not a basis here to reject the conviction itself. I think if the court concluded that there was an abuse of discretion rejecting the offered plea, the appropriate remedy would be to re-sent it back for resentencing. As if. Yes. I mean, that's the appropriate remedy. There's no right to conviction by guilty plea rather than jury trial, and that can be taken care of through the resentencing. Well, we have cases that say in the context of ineffective assistance of counsel for failing to tell somebody of a guilty plea, there is a right to go back and undo it. But I'm not sure whether the – I'm trying to remember whether those are resentencing cases also or whether they require a new conviction. Are you familiar with those? I don't know that I'm familiar with them per se. Okay. I would note a lot of the cases that this court deals with in the Rule 11 context, at least, are problems with kind of the plea colloquy, and there the court will vacate the guilty plea. But I'm not aware of a situation like this where there's no problem in the plea process. Vacate the jury trial. Okay. I mean, it really would be put a defendant in a better position if he, in the district court, decided he simply didn't want to plead guilty. He would then get a second trial with really no basis for doing so. I mean, he would have that option in the district court. I mean, this court would not compel him to actually plead guilty. It would simply vacate the conviction for the defendant to be given the opportunity to plead guilty. And he really shouldn't be placed in a better position than he would have been if the district court had accepted in the first place. I would note, though, that although the government believes that he could make a claim for harmless error based on sentencing issues, we don't believe that that was actually done here, that any error was harmless. As we noted, in Day, this court addressed an ineffective decision as a counsel claim involving a guilty plea. There, the defense counsel improperly informed the defendant that he had to go to trial to raise sentencing entrapment, which wasn't right. At trial, the defendant ultimately committed perjury and got an obstruction of justice enhancement. And this court held that there was not prejudice on the obstruction of justice issue from the defendant's wrong advice about the guilty plea because it was the defendant's independent act in committing perjury that led to the obstruction of justice enhancement. And that's exactly what happened in this case. As the district court repeatedly noted during sentencing, the district court's decision to reject the guilty plea did not require the defendant to do anything at trial. The defendant simply could have sat there. He even could have gone beyond that. I mean, he could have cross-examined the witnesses to test the veracity to see if their statements held up since he disputed the fact. But nothing required him to get on the stand and give what the district court determined to be false testimony. And that's what led to the obstruction of justice enhancement. I also note that although the district court didn't rely on the fact of his testimony at the change of plea, the defendant had already committed obstruction of justice before the district court rejected the guilty plea. The defendant was placed under oath at the change of plea proceedings. And at the change of plea proceedings, he denied having a gun, which is the same fact that he denied at trial that led to the obstruction of justice enhancement. So the district court could have based the obstruction of justice enhancement on his change of plea testimony. It ultimately didn't because the testimony was repeated at trial. But it was not the district court's rejection of the plea that led to the obstruction of justice enhancement. Now, I think the acceptance of responsibility is in a slightly different posture, only because in Day, this court there held there was prejudice from the failure to accept or for the failure to plead guilty from the ineffective assistance of counsel. But I think what's important when you look at the facts of Day are that the court was concerned that the loss of acceptance of responsibility had resulted from the fact of trial because the defendant had gone to trial and contested his guilt. That's not what happened in this case. First of all, the defendant at all times contested an element of the offense, which warrants rejection of the acceptance of responsibility adjustment. But I think what's more important than that is the district court was clear at sentencing that the result in this case would have been different if there hadn't been the obstruction of justice. And the court was clear that it relied on that lying to reject the acceptance of responsibility adjustment. So I think in this case, because the perjury was the defendant's independent choice and it led to both the obstruction of justice enhancement and the rejection of acceptance of responsibility, there's no basis to say the defendant was harmed from the rejection of his guilty plea. Again, he simply could have sat at trial and done nothing. I mean, ultimately what the defendant's arguing is the court should have taken the government and the parties' word that they could prove their case, and it was wrong not to do that. Instead, what the district court did is say, I'm not going to take the parties' word that they can prove this case, but what I'm going to require the government to do is prove its case beyond a reasonable doubt to the jury. I'm not going to require the defendant to do anything. He doesn't have to testify. He doesn't have to cross-examine witnesses. But I want, in the face of a protestation of innocence, that the jury determine beyond a reasonable doubt the defendant's guilt. And there's nothing improper with doing that. I note on the obstruction of justice issue, which the defendant had raised in his argument, really all the defendant's saying is that the court should reweigh the evidence, which really isn't clear review. I mean, there were some facts that could have supported the defendant's position, but here the jury reached a verdict beyond a reasonable doubt. The district court, who heard the testimony and evaluated the witnesses, went back through the evidence itself and made a determination that was consistent with the jury verdict. And there doesn't appear to be, on these facts, any basis to conclude there was clear error. I know we didn't discuss the Shackling issue at all, at least in the opening. I'm happy to answer any questions the panel may have on that issue. I would simply suggest that it wasn't fairly presented to the district court as a constitutional claim. It was simply a request to take off the handcuffs. And at a minimum, even if the court doesn't reach the broader issue of whether there's no constitutional right at a sentencing hearing to be free from shackles, here the fact the defendant had an initial attention hearing, which the Supreme Court in Holbrook held was sufficient to overcome any prejudice, at least in that case, the minimal prejudice of placing personnel in the courtroom was sufficient to overcome that. The fact the defendant was already found guilty, which in Ducat this Court said could be a factor to be considered, and the fact the defendant was convicted of a crime of violence, both bank robbery and armed bank robbery are crimes of violence, were sufficient, regardless of what the test is in a non-jury sentencing proceedings, to be sufficient to warrant the shackling. If there's no further questions, the Government will submit. Kagan. Thank you, Mr. Silber. Mr. Libby. Libby. Thank you, Your Honor. Just very briefly, the Government persists in its argument that there was not a sufficient factual basis, except it believed the factual basis that it provided in the plea agreement that it prepared was, in fact, sufficient for a guilty plea to go forward. So I think it is somewhat disingenuous for the Government to argue that there was not a sufficient factual basis in the record when it, at the time of the change of plea hearing, believed that what appeared in the plea agreement was, in fact, sufficient. They wrote the plea agreement. So I think they did. But they wrote it in language and the lawyer representing the defendant changed the language. Which the Government agreed to. You know, the Government signed off on the plea agreement. They ultimately, when it came time to the actual plea hearing, said, well, no, we don't like the word Alford. But they, in fact, did sign the plea agreement and agreed that that was a sufficient factual basis for the defendant to plead guilty. I see my time has expired. Unless the Court has any questions. No, thank you. Okay. Thank you, Mr. Libby. And that is just argued that will be submitted in the Court of Appeals and an assessment of that. All right.
judges: Rymer, Graber, Molloy